**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANGELA DONALD, Administratrix** | ) | |
| **For the Estate of Marcus Grubbs,** | ) | |
| **deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **JOHN Q. HAMM, Alabama Prison** | ) | |
| **Commissioner, in his individual** | ) | **JURY TRIAL DEMANDED** |
| **capacity in violation of the** | ) | |
| **Constitutional Rights of Marcus** | ) | |
| **Grubbs, deceased;** | ) | |
| **JOHN CROW, Warden of Kilby** | ) | |
| **Correctional Facility, named in his** | ) | |
| **Individual capacity, and** | ) | |
| **GWENDOLYN BABERS, Warden** | ) | |
| **of Kilby Correctional Facility, named** | ) | |
| **in her Individual capacity,** | ) | |
| | ) | |
| **Defendants.** | | |

## COMPLAINT

COMES the Plaintiff, Angela Donald, as Administratrix of the Estate of
Marcus Grubbs, deceased, by and through her attorneys, files the Plaintiff's
Complaint against each of the individually named Defendants: John Q. Hamm, and
John Crow, each in his individual capacity, pursuant to 42 U.S.C. § 1983 arising

1

from the death of Marcus Grubbs at Kilby Correctional Facility on May 4, 2022, and states as follows:

**INTRODUCTION**

1.      The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments. This bedrock civil right enshrined in the Bill of Rights protects all Americans, and most fundamentally confers on those persons who are incarcerated the right to be free from known and unreasonable risk of serious harm while in custody.  Marcus Grubbs, a 39-year-old prisoner at the notoriously violent and unsafe Kilby Correctional Facility (the "Kilby Prison" or "Kilby" or "Prison"), was denied this most basic constitutional and human right, when, on May 4, 2022, he was attacked and assault and murdered by another inmate. (See Exhibit A, attached).

2.      Marcus Grubbs was repeatedly beaten and stabbed and by another prisoner and left to bleed while prison staff simply watched or ignored the violent acts taking place.

3.      No Prison personnel intervened either to prevent the altercation, acted to stop the violence, or even provided Mr. Grubbs with needed medical assistance after being repeatedly beaten and stabbed by another inmate.

4.      At the time of the inmate's assault and assault and murder of Mr. Grubbs on May 4, 2022, the history of assault and murder, rape, and other assaults

2

at Kilby, the easy availability of weapons among prisoners at Kilby, the climate of expected violence at that facility by both violent and mentally-ill inmates, and the utter failure of the Alabama Department of Corrections, and each Defendant in this case to address these horrific conditions, and to provide adequate staffing and security at Kilby, all were well known by each Defendant.

5.     In 2022, when Mr. Grubbs was assault and murdered at Kilby on May 4, 2022, he was one of many unexplained or suspicious death at Kilby in just the past months.

6.     Despite this obvious awareness, each Defendant in this case took no action, took inadequate actions, or failed to act altogether, in deliberate, heartless, cruel, and tragic indifference to their obligations as protectors of Mr. Grubbs consistent with his rights under the Eighth Amendment.

7.     Angela Donald, as Administratrix of the Estate of Marcus Grubbs, brings this action against the Defendants for the violation of her son's rights under the Eighth and Fourteenth Amendments to the United States Constitution. Rather than fulfill their obligations to take any reasonable measures to protect Mr. Grubbs from violence at the hands of other Kilby inmates, the Defendants, acting under color of state law, instead enabled his assault and murder, and, by their reckless or intentional failures to take actions to reasonably protect Mr. Grubbs from violence, deprived Mr. Grubbs of his most fundamental constitutional rights.

8.      Moreover, Defendants deprived Mr. Grubbs of his right to receive proper and necessary medical care for his serious medical needs under the Eighth Amendment after he suffered multiple beatings to his head, and stab wounds at the hands of a fellow prisoner.  As a direct and proximate result, Mr. Marcus Grubbs died while incarcerated, suffering serious medical needs, and under the care of the Defendants.

9.      Plaintiff further brings this action for Mr. Grubbs' wrongful death, pursuant to Section 6-5-410 of the Alabama Code. Defendants had a duty to protect Mr. Grubbs from known and unreasonable risks of harm, including, to say the least, homicide by another inmate. By utterly failing to protect Mr. Grubbs from harm that was foreseeable in the nightmare at Kilby, Defendants are liable for the criminal acts of the assailant who killed Mr. Grubbs.

10.     Mr. Grubbs' killing was not an anomaly. It was just another example of the rampant and systemic violence at Kilby, where assault and murders, rapes, stabbings, and beatings have become routine. Mismanagement, understaffing, poor leadership, overcrowding, inadequate security, and unsafe conditions have led to an extraordinarily high homicide rate, weekly stabbings and assaults, and a culture where violence is not adequately controlled or prevented by those in positions of authority who are entrusted with ensuring prisoner safety.

11.    At the time of Mr. Grubbs' assault and murder, these treacherous conditions were notorious and well known to each and every Defendant in this case. Kilby's culture of extreme and commonplace violence, mismanagement and understaffing had been well documented in court documents, in detailed and repeated reports in the media, including media local to Kilby, and in many reports by non-profit organizations.

12.    In addition, this horrific history and these intolerable conditions at Kilby and other Alabama prisons triggered an investigation by the United States Department of Justice in 2016, and the DOJ's resulting report was scathing and damning of the failures of ADOC and its hierarchy in administering prisons in Alabama, including Kilby. On information and belief based on their respective positions, responsibilities, and experience, each Defendant in this case was aware of the horrific and shocking circumstances recounted in the DOJ report.

13.    Instead of taking any actions that could have protected prisoners such as Mr. Grubbs and thereby prevented Mr. Grubbs' assault and murder, Defendants did absolutely nothing, resulting in a situation on the day of Mr. Grubbs' death where one or more prison guards, assigned to Mr. Grubbs' cell block, merely watched and did nothing.

14.    Each and every Defendant knew of the widespread history of excessive risk of inmate-on-inmate violence at Kilby, which left Mr. Grubbs in substantial

danger of serious harm. Despite this personal knowledge, each and every Defendant took no action – either at a policy level or at Kilby on the day of the assault and murder – to minimize the severe staffing shortages, availability of inmate weapons, and culture of violence that caused Mr. Grubbs' untimely death.

15.     Accordingly, Plaintiff brings this action on behalf of Mr. Grubbs' estate seeking compensation to redress Defendants' deliberate indifference to the serious risk of harm to Mr. Grubbs' safety, including deliberate indifference to Mr. Grubbs' serious need for medical care, which violated his Eighth Amendment rights under the U.S. Constitution, and for his wrongful death under Section 6-5- 410 of the Alabama Code.

## PARTIES

16.     Plaintiff Angela Donald, is the duly appointed Administratrix of the Estate of Marcus Grubbs, deceased. Mr. Grubbs was incarcerated at Kilby for property related offenses at the time he was stabbed and assault and murdered by another inmate on May 4, 2022. (See Exhibit B).

17.     Defendant John Q. Hamm is the Commissioner of the Alabama Department of Corrections ("ADOC"), was the Commissioner at the time of Mr. Grubbs' assault and murder, and is a resident of the State of Alabama.

18.    Defendant John Crow is an officer of the Alabama Department of Corrections ("ADOC"), was a Warden at the Kilby Correctional Facility at the time of Mr. Grubbs' assault and murder, and is a resident of the State of Alabama.

19.    Defendant Gwendolyn Babers is an officer of the Alabama Department of Corrections ("ADOC"), was a Warden at the Kilby Correctional Facility at the time of Mr. Grubbs' assault and murder, and is a resident of the State of Alabama.

20.    Plaintiff refers collectively to Defendants Hamm, Crow and Babers as "Defendants." Plaintiff asserts each and every allegation relating to "Defendants" individually as to each such Defendant included in such definition, and such pleading referring to such defined "Defendants" is for convenience and economy only and the avoidance of repetition.

21.    Plaintiff names each of the Defendants in his or her individual capacity unless otherwise indicated. Each of the Defendants acted under color of state law when engaging in the allegations and conduct described herein.

## JURISDICTION AND VENUE

22.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because this action is brought under 42 U.S.C. § 1983, seeking damages for Defendants' violations of the constitutional rights of Decedent Marcus Grubbs. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

23.    Venue appropriately lies in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims presented in this case occurred in the Northern District of Alabama.

## FACTUAL ALLEGATIONS

### A.    Decedent Marcus Grubbs

24.    Marcus Grubbs, deceased, was the son of Angela Donald, the duly appointed Administratrix of the Estate of Marcus Grubbs, who has filed suit concerning the assault and assault and murder of her son while incarcerated at Kilby.

**25.    Marcus Grubbs had been sentenced to prison for nonviolent property convictions and had been eligible for parole for more than eight months. Marcus Grubbs was scheduled for a parole hearing in less than one month on December 3, 2020.**

**26.    Upon information and belief, despite Mr. Grubbs' low level custody designation, he was assigned to serve his sentence at Kilby in close proximity with both violent, dangerous and mentally-ill inmates.**

**27.    At the time of his death while incarcerated at Kilby, Mr. Grubbs was anticipating his release on parole, and looking forward to working in his community with the support of his family and others.**

### B.    Mr. Grubbs was repeatedly beaten and stabbed by another inmate while inside his cell in the presence of Unknown Correctional Officer(s).

28.     On May 4, 2022, when another inmate falsely accused Marcus Grubbs of stealing another inmate's personal property, Mr. Grubbs responded that he did not steal anything, and that he had received certain personally property from another inmate.  During this argument, Unknown Correctional Officer(s) watched.

29.     After Mr. Grubbs responded that he had not stolen anyone's property, the inmate making the accusation, bludgeoned Marcus Grubbs in the head with a stick or pole.  During this violent event, Unknown Correctional Officer(s) watched. The inmate that bludgeoned Mr. Grubbs may have been known to the Defendants to be both violent and suffering from a mental illness.

30.     Shortly thereafter, while Unknown Correctional Officer(s) continued to watch, the violent inmate again struck Mr. Grubbs in the head with a stick or pole 3 or 4 more times, causing additional and significant injury to Mr. Grubbs' head and skull.

31.     As the Unknown Correctional Officer(s) continued to sit back and observe, Mr. Grubbs instructed the violent inmate not to strike him again.  However, the violent inmate again struck Mr. Grubbs in the head with the stick or pole causing additional and significant injury to Mr. Grubbs' head and skull, as the Unknown Correctional Officer(s) watched.

32.     At that time, Mr. Grubbs fell to the floor of his cell.

33.    After Mr. Grubbs fell to the floor of his cell, the violent inmate pulled out a knife, or other weapon similar to an ice pick, and began stabbing Mr. Grubbs in his body in his kidney area.  Mr. Grubbs could not protect himself while the Unknown Correctional Officer(s) continued to watch.  435.    The violent inmate continued to stab Mr. Grubbs while he was on the floor, and began stabbing Mr. Grubbs in his neck with the knife or ice pick.  The Unknown Correctional Officer(s) took no action and merely continued to the watch violent actions and resulting injuries being suffered by Mr. Grubbs.

35.    After the inmate decided to stop stabbing Mr. Grubbs, one Unknown Correctional Officer, who had observed the continued violence taken against Mr. Grubbs, did not provide Mr. Grubbs with any assistance or care, did not notify anyone about Mr. Grubbs' injuries, and did not take Mr. Grubbs to the infirmary. Mr. Grubbs received no medical assistance whatsoever, and an Unknown Correctional Officer instructed Mr. Grubbs to go to the bathroom to clean himself up.

36.    At no time did any officer or employee at Kilby, including the Unknown Correctional Officer(s) who observed the continued beating and stabbing of Mr. Grubbs attempt intervene, attempt to stop the violent inmate's attack of Mr. Grubbs, or attempt to protect Mr. Grubbs.

37.    Shortly thereafter, on May 4, 2022, Mr. Grubbs died at the Kilby prison from the beating and stabbing by a violent inmate observed by the Unknown Correctional Officer(s).

38.    It is well known by the Defendants that inmates at Kilby make knives and weapons from parts and pieces of metal from various devices and equipment at the prison, including the metal fans located in the prison.

49.    It is also well known by the Defendants that both violent and mentally ill inmates are incarcerated at Kilby in proximity with other non-violent inmates.

40.    The Plaintiff and Plaintiff's counsel is presently unaware of any investigation conducted, or presently being conducted, by the Defendants or by the ADOC concerning the assault and murder of  Mr. Grubbs on May 4, 2022

41.    Additional information concerning the circumstances surrounding the assault and assault and murder of Mr. Grubbs while incarcerated at Kilby and under the care of the Defendants remains uniquely in the possession of the Defendants and others, including any internal investigative report, notes, emails, communications and other records that Defendants and non-parties will be required to disclose during discovery.

42.    Tragically, Mr. Grubbs died at Kilby, and is lost to Plaintiff and her family, except in loving memory. Neither Plaintiff nor her counsel can speak with Mr. Grubbs for additional details that will await discovery and proof at trial.

44.    On the other hand, as set forth at length below, it is crystal clear that inmate-on-inmate violence and the prevalence of weapons and contraband among prisoners at Kilby were widespread, well documented, and widely publicized, and that Kilby suffered and continues to suffer widespread and chronic critical staffing shortages, broken locks, blind spots, deficiencies in inmate supervision and deficiencies in policies and procedures meant to protect inmates.

45.    Likewise, the public evidence is overwhelming that, by reason of their respective positions, responsibilities, and experience, each Defendant was aware of these horrific conditions and chronic failures, and was aware of his or her duty to take reasonable steps to keep inmates safe from violence, and thus that each and every Defendant individually failed to do his or her job to comport with Mr. Grubbs' constitutional right to be protected against cruel and unusual punishment. For each Defendant's callous and deliberate indifference, Mr. Grubbs paid the ultimate price, with his life.

### C.    There is a Widespread History of Abuse at Kilby.

46.    As the facts below demonstrate, Mr. Grubbs and his fellow prisoners effectively lived in a war zone where violence and the threat of serious injury were constant.

47.    Deadly interactions between inmates such as the one that took Mr. Grubbs' life are not the exception at Kilby. This has been a well- documented norm

for years.  Each Defendant was aware of the shocking and intolerable conditions at Kilby at the time of the violent assault and assault and murder of Mr. Grubbs.

48.    As the United States Department of Justice (the "DOJ") has noted, in 2019, shortly before Mr. Grubbs' assault and murder, Defendant Dunn admitted that "that the current level of violence [in Alabama prisons] is 'unacceptably high.'"

49.    As Defendant Dunn acknowledged even earlier, in 2017, and as The New York Times reported, it "wo[uldn't] be long until [Alabama prisons were] the most understaffed and most violent."

50.    Nationally-recognized corrections expert Steve J. Martin examined the conditions at Alabama's prisons and opined in a 2016 expert report in similar litigation: "The frequency of assaults resulting in life-threatening injuries is quite simply among the highest I have observed in my 43-year career in corrections."

51.    The Defendants are aware of Mr. Martin's report and, on information and belief based on their respective positions, responsibilities, and experience, each Defendant herein was aware of that report and the circumstances described therein at the time of Mr. Grubbs' assault and assault and murder in 2020.

52.    In 2016, the DOJ initiated a Civil Rights of Institutionalized Persons Act ("CRIPA") investigation of Alabama prisons. In April 2019, again before Mr. Grubbs' assault and murder, the DOJ released its findings from that investigation (the "2019 DOJ Report"), in which it concluded that, between 2016 and 2018,

violence and crime were so pervasive and extreme, and mismanagement was so egregious at Alabama prisons, including Kilby, that there was "reasonable cause to believe the conditions in Alabama's prisons for men violate the Eighth Amendment of the U.S. Constitution."

53.     In particular, the DOJ found that "[t]he conditions in Alabama's prisons are objectively unsafe, as evidenced by the high rate of prisoner-on-prisoner homicides and violence," and that understaffing, overcrowding, corruption, and the prevalence of contraband in Alabama prisons all lead to the finding that "ADOC fails to protect prisoners from serious harm and a substantial risk of serious harm."

54.     The conditions at Kilby leading up to and at the time of Mr. Grubbs' assault and murder are not only consistent with the DOJ's conclusions, but are clearly some of the worst in the ADOC prison system, leading to a well-supported label as one of Alabama's most dangerous prisons.

55.     Among the 35 prisoner homicides committed in Alabama prisons between 2013 and 2018, many occurred in Kilby.  In fact, as reported by Equal Justice Initiative, when Mr. Grubbs was assault and murdered at Kilby on May 4, 2022, *he was one of many unexplained or suspicious deaths at Kilby*.

56.     In 2017, The New York Times reported that the estimated percentage of inmates armed with some kind of weapon "run from well over half to just about everyone."  On information and belief, based on their respective positions,

responsibilities, and experience, each Defendant was aware of the report in The New York Times and the circumstances described therein at the time of Mr. Grubbs' assault and assault and murder.

57.    Knives, ice picks, and other prison-made weapons were and are common throughout Kilby and, upon information and belief, have been used in numerous assault and murders and assaults of inmates at Kilby, circumstances of which each Defendant was well aware of at the time of Mr. Grubbs' assault and assault and murder.

58.    At the time of Mr. Grubbs' assault and murder, it was common knowledge among staff at Kilby that the inmate population was heavily armed, and that some Prison personnel actually encouraged inmates to obtain and use weapons. On information and belief, based on their respective positions, responsibilities, and experience, each Defendant was aware of these circumstances at the time of Mr. Grubbs' assault and assault and murder.

59.    In addition, as documented in the 2019 DOJ Report, and as already known by each Defendant, Kilby was dangerously understaffed at the time of Mr. Grubbs' assault and murder.

60.    The 2019 DOJ Report noted that, as of June 2018 — prior to Mr. Grubbs' assault and murder — Kilby Prison employed far less than its authorized correctional officers, which posed a severe understaffing problem.

61.    According to the DOJ, the *Defendants publicly reported at least 159 prisoner deaths for Fiscal Year 2020* and 75 prisoner deaths in the first five months of Fiscal Year 2021.  However, the Defendants have not identified the causes of some of these deaths. Further, the Defendants fail to report a death while it is under investigation, a status which sometimes continues for years.

62.    The number of prisoner-on-prisoner assaults within Alabama's Prisons for Men, including Kilby, consistently has been high in recent years as demonstrated by the DOJ.

63.    According to the DOJ, from October 2018 to September 2019 (Fiscal Year 2019), before Mr. Grubbs' assault and assault and murder, approximately 278 prisoners in Alabama's Prisons for Men suffered serious injuries, defined as injuries requiring transport to outside hospitals, as the result of prisoner-on-prisoner assaults as detailed by the DOJ.

64.    Without explanation, in October 2019, the Defendants stopped publicly reporting separate numbers each month for serious injuries caused by prisoner-on-prisoner violence.

65.    Nonetheless, according to the DOJ and publicly available data, there were over 1,100 prisoner-on-prisoner assaults in Alabama's Prisons for Men from October 2019 through September 2020 (Fiscal Year 2020).

66.    The Defendants, through their acts and omissions, have failed to provide adequate supervision of prisoners housed at Kilby to prevent such violence.

67.    One factor contributing to the violence is overcrowding in the Alabama Department of Corrections. The prison was built to house 440 prisoners but has had 1,187 prisoners, according to a DOC report.

68.    According to the DOJ, Kilby has The Kilby Prison was at a 268 percent capacity.

69.    The Defendants, through their acts and omissions, have engaged in a pattern and practice that obscures the level of harm from prisoner violence in the Alabama Department of Corrections, including Kilby. For example, (a) the Defendants do not consistently, reliably, or accurately classify the causes of deaths that occur within the Alabama Department of Corrections; (b) the Defendants have classified prisoners' deaths as occurring by "natural causes" when the death is caused by prisoner-on-prisoner violence; (c) the Defendants do not have a centralized system to track or review prisoner mortalities within the Alabama Department of Corrections, nor do the Defendants maintain a unified repository or database for prisoner autopsies to track and identify patterns in causes of death.

70.    The Defendants, through their acts and omissions, fail to protect prisoners at Kilby from homicide even when the Defendants have advance warning that certain prisoners are in danger from violence at the hands of other prisoners.

71.    The Defendants, through their acts and omissions, fail to properly supervise prisoners in custody at Kilby, which results in a failure to prevent serious injuries to prisoners. Because of Defendants' failure to supervise prisoners, there is a delay in security staff discovering life-threatening injuries to prisoners.

72.    The Defendants, through their acts and omissions, fail to screen entrants to Kilby for contraband adequately and fail to prevent the introduction of illegal contraband into the Kilby as demonstrated by the DOJ. "Contraband" refers to prohibited materials that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the Alabama Department of Corrections, including weapons.

73.    The Defendants, through their acts and omissions, fail to control effectively the introduction, manufacture, and use of weapons within the Alabama Department of Corrections, including Kilby, and the use of weapons are widespread within Kilby. The large number of weapons contributes to the high rate of violence, sexual abuse, and death.

74.    The Defendants, through their acts and omissions, fail to respond properly to prisoner and staff reports of threats and inmate violence so that management can appropriately discipline assailants and avert future violence.  For example, in February 2018, a prisoner was killed by another prisoner at Kilby—one

day after the prisoner who was killed expressed concern for his safety to prison officials.

75.    The Defendants, through their acts and omissions, discourage victims from reporting incidents of violence or threats of violence including through their failure to establish a grievance system in the Alabama Department of Corrections, their retaliation against prisoners who report violence and threats of violence, and their imposition of discipline against prisoners who report violence or refuse to name individuals they fear may harm them.

76.    The Defendants, through their acts and omissions, fail to implement effective classification and housing policies, thereby resulting in violence caused by improperly commingling violent prisoners with non-violent prisoners.

77.    The Defendants, through their acts and omissions, allow or fail to prevent uncontrolled movement of prisoners, leading to prisoners roaming in unauthorized or unsupervised areas and leading to violence.

78.    In April 2018, a Kilby prisoner, covered in blood, approached security staff stating that he had been stabbed by several other prisoners. He had to be airlifted to an outside hospital for treatment.

79.    The Defendants' pattern or practice of failing to protect prisoners from violence at the hands of other prisoners has long existed.

80.    The Defendants, through their acts and omissions, discourage reporting of prisoner-on-prisoner violence.

81.    The Defendants, through their acts and omissions, fail to prevent prisoners from being violently abused by other prisoners in retaliation for reporting violence or abuse.

82.    For example, in January 2018, a prisoner at Kilby resorted to cutting his wrist after an attempted sexual assault and physical assault by another prisoner "because he feared being in population and needed to be placed in a single cell." He reported that two nights prior, two prisoners had attempted to rape him.  The incident report notes that the perpetrators would receive "disciplinary actions for assault," and that no further action would be taken.

83.    Understaffing, coupled with the lack of adequate surveillance cameras, exacerbates the serious risk of death and physical violence at the hands of other prisoners in the Alabama Department of Corrections, including Kilby.

84.    Defendants have been aware of the dangerous conditions at Kilby for many years. In fact, Defendant Dunn has stated to the Alabama Legislature that "there is a direct correlation between the shortage of officers in our prisons and the increase in violence," and acknowledgment that the current level of violence is "unacceptably high."

85.     The Defendants have perpetuated the culture of violence at Kilby as described above by either engaging in violence themselves, tolerating and condoning violence by staff members, failing to discipline prisoners for violent acts, or refusing to discipline correctional officers for using excessive force against prisoners.

86.     Based on their respective positions, responsibilities, and experience, each Defendant knew that the combination of these security deficiencies gravely contributed to numerous violent incidents in the years and months preceding Mr. Grubbs' assault and murder.   Each and every Defendant also knew that his or her failure to adequately supervise inmates created a dangerous environment conducive for inmates to assault and assault and murder other inmates, such as the violent assault and murder of Mr. Grubbs.   Moreover, the lack of adequate and properly trained staffing contributed to Defendants' failure to intervene and end the violence, and failure to attend to Mr. Grubbs' serious need for medical attention after he was beaten and stabbed.

87.     The abuses detailed above have been so rampant over such a long period of time, that, based upon information and belief, the substantial risk to the prison population at Kilby is obvious simply from being present in the prison.

88.     Moreover, the Defendants have been exposed to objective evidence of the systemic culture of violence at Kilby:

89.    Based on the litany of sources listed above, it is clear that each Defendant was aware that Kilby suffered from rampant and pervasive inmate-on-inmate violence, which was exacerbated by the well-known and serious deficiencies at the Prison.

90.    By reason of their respective positions, responsibilities, and experience, each Defendant was on notice, as a result of longstanding, clearly-established Eleventh Circuit case law, that the failure to implement measures to address dangerous prison conditions where "inmate-on-inmate violence occurred regularly" constitutes deliberate indifference to an inmate's constitutional right to be free from harm from other inmates. See, e.g., *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (it is "clearly established in this Circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions . . . that pose a risk of serious physical harm to inmates.").

91.    Despite knowledge that existing policies and practices were deficient and created a substantial risk of harm to inmates, each and every Defendant failed to take any meaningful corrective action.

92.    Indeed, as the 2019 DOJ report found, despite the ADOC's awareness of the rampant violence in the ADOC prisons, including Kilby, "little has changed."

93.    The evidence is overwhelming that each Defendant chose to leave inmates, including Mr. Grubbs, exposed to a continuing risk of serious harm as a result of chronic understaffing and deficiencies in policies and procedures to protect inmates, exhibiting deliberate indifference to the safety of the inmates. Defendants, and each of them, made their decisions to take no action or inadequate action knowingly, and irresponsibly, and they must be held to account for those actions, and inaction, including the circumstances that caused the assault and assault and murder of Mr. Grubbs.

94.    Each Defendant was in a position to take actions that could have prevented Mr. Grubbs' assault and murder, but, through deliberate indifference, each Defendant failed to do so.

95.    Specifically, each Defendant  could have and should have taken actions to ensure that inmates like Mr. Grubbs' killer did not have access to weapons, that properly trained guards were hired and assigned; guards were not asleep while on duty; guards would act to defuse violent altercations that had grown commonplace and subsequently administer any necessary medical aid. Any one of those actions would have greatly diminished the likelihood of Mr. Grubbs' assault and murder. Accordingly, the deliberate indifference of the each of Defendant to the well-documented issues at Kilby caused the assault and murder of Mr. Grubbs.

96.     Defendants Jones and Lamar, as Wardens of the Kilby Prison, were responsible for the day-to-day operations of Kilby, the safety and security of all inmates at the Kilby, and the supervision of all subordinate employees. Defendants Jones's and Lamar's responsibilities, as Warden, included ensuring adequate supervision and monitoring of inmates, adequate classification of inmates, appropriate housing assignments for inmates, adequate staffing levels, appropriate discipline and deterrence of inmate and staff misconduct, adherence by staff to search protocols, adequate implementation of internal security audits, and proper installation, repair, and maintenance of locks, cameras, and other security devices necessary for safety and security; classification and housing assignment process at Kilby, investigations into inmate-on-inmate assaults, and reviewing and approving all disciplinary and incident reports at Kilby.

97.     Mr. Grubbs was vulnerable to attack because of frequent violence at Kilby; the failure of certain individuals presently unknown to Plaintiff (the "Unknown Correctional Officers" defined above) and stationed in the vicinity of the Mr. Grubbs' cell on the day of Mr. Grubbs' assault and murder, either recklessly or deliberately ignored the assault and murder while it was happening.

98.     As a result of the failures of each Defendant, including the individuals presently unknown to Plaintiff (the "Unknown Correctional Officers" defined

above) no officer provided immediate medical care or summon additional assistance. Instead, Mr. Grubbs was left to fend for himself and was killed.

99.    In an op-ed published on February 12, 2019, before Mr. Grubbs was assault and murdered, Governor Kay Ivey stated that "issues of violence, poor living conditions and mental illness persist within our system. These issues, and others, are exacerbated by a crowded inmate population, correctional and health care staffing challenges, and aging prison infrastructure – each piece compounding the others."

100.    In an op-ed published on August 12, 2020, before Mr. Grubbs was assault and murdered, Commissioner Dunn stated that "[o]ur facilities are crowded, and our buildings are falling apart. Living and working conditions are, unquestionably, not sustainable. We face staffing shortages. Instances of violence among our inmate population pose a real challenge."

## CAUSES OF ACTION
## COUNT ONE

**Violation of the Eighth Amendment to the United States Constitution, Applicable to the State of Alabama through the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. § 1983 (Against All Defendants)**

101.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1-100 as if set forth fully herein.

102.    Plaintiff Angela Donald, as Administratrix of the Estate of Marcus Grubbs, deceased, brings this claim against the Defendants, each of whom deprived Mr. Grubbs of the right to be free from known and unreasonable risk of serious harm while in ADOC custody, in violation of the Eighth Amendment, applicable to the State of Alabama through the Due Process Clause of the Fourteenth Amendment.

103.    Defendants, while acting under the color of state law, recklessly or intentionally deprived Mr. Grubbs of his rights under the Eighth Amendment to the United States Constitution, applicable to the State of Alabama through the Due Process Clause of the Fourteenth Amendment. Defendants failed to take reasonable measures to protect Mr. Grubbs from violence at the hands of other Kilby Prison inmates.

104.    The prison conditions at Kilby, specifically the normalized culture of violence, chronic understaffing, corruption, lack of inmate supervision, inoperative locks, the presence of blind spots, and ready access to weapons and contraband, posed a substantial risk of serious harm to Mr. Grubbs.

105.    This substantial risk of inmate-on-inmate violence at Kilby, exacerbated by the additional conditions recounted in detail above, has been well-documented and widely known for years, including in the years leading up to Mr. Grubbs' death, as chronicled in a multitude of media reports, legal documents, including prior lawsuits filed against multiple Defendants, sued here among others,

and multiple reports by the United States Department of Justice. These circumstances likewise are readily apparent to any individual present on the grounds of Kilby, and notably any individual whose misfortune it is to be incarcerated there. Moreover, the individual Defendants and/or their subordinates have explicitly acknowledged the substantial risk of harm at Kilby both in the press and in sworn testimony.

106.   As a result of the rampant and pervasive nature of the violence at Kilby and the widespread and well-documented prevalence of contraband, weapons, corruption, lack of supervision, blind spots and faulty locks, each Defendant was aware of the substantial risk of serious harm facing each inmate at Kilby.

107.   Each Defendant, Hamm, Crow and Babers, consciously disregarded this substantial risk by failing to respond in an objectively reasonable manner to reduce the risk of harm at Kilby.

108.   Specifically, and without limitation, each Defendant, Hamm, Crow and Babers, had knowledge and notice of the widespread history of inmate-on-inmate violence, prevalence of contraband, weapons, corruption, lack of supervision, blind spots and faulty locks at Kilby.

109.   With such knowledge and on such notice, each Defendant, Hamm, Crow and Babers, failed to take any action reasonably calculated to correct or address these barbaric and inhumane conditions.

110.    Each Defendant, Hamm, Crow and Babers,  failed to enact or follow reasonable policies and procedures designed to provide adequate security and supervision; failing to properly staff the Kilby Prison with prudent and well-trained correctional officers; failed to address known security deficiencies, such as lack of intercoms, operative security cameras, and mirrors; and exacerbated the risk and condoned the conduct and conditions creating this substantial risk of serious harm at Kilby Prison.

111.    In addition, and despite having knowledge of the substantial risk of serious harm posed by inmate-on-inmate violence at Kilby, each Defendant, Hamm, Crow and Babers, on the day of Mr. Mr. Grubbs' assault and murder, either recklessly failed to monitor the cell, and deliberately ignored the assault and murder while it was happening.

112.    Each Defendant, Hamm, Crow and Babers, knew that, by his or her failure to act, Kilby Prison's dangerous conditions would be insufficient to provide Mr. Grubbs with reasonable protection from violence as they knew they were required to provide.

113.    In engaging in this unlawful conduct, each Defendant, Hamm, Crow and Babers, was not acting within his or her discretionary authority, and his or her conduct violated the Constitution and clearly established law, including Mr. Grubbs'

constitutional right to be protected from physical assault by other inmates and the right to treatment for a serious medical need.

114.   The clearly-established law setting forth the rights of Mr. Grubbs and other individuals incarcerated in Alabama included, without limitation, binding precedent of the Eleventh Circuit, e.g., *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (it is "clearly established in this Circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions . . . that pose a risk of serious physical harm to inmates.").

115.   Each Defendant, Hamm, Crow and Babers, showed deliberate indifference through his or her reckless or intentional failures to take any actions to safeguard Mr. Grubbs' rights, safety, and well-being. The conduct of each Defendant was objectively unreasonable.

116.   The conduct of each Defendant, Hamm, Crow and Babers, in violation of Mr. Grubbs' Eighth Amendment rights caused Mr. Grubbs' death. Each Defendant was in a position to avert Mr. Grubbs' assault and murder and, due to the deliberate indifference of each Defendant, failed to do so.

117.   Plaintiff seeks compensatory and punitive damages due to each Defendant's deliberate indifference, in an amount to be determined by the jury, together with interest, reasonable attorneys' fees, and the costs of this action.

## COUNT TWO
## Ala. Code § 6-5-410 Wrongful Death
## (Against All Defendants)

118.   Plaintiff incorporates by reference each and every allegation contained in paragraphs 1-100 as if set forth fully herein.

119.   Plaintiff Angela Donald, as Administratrix of the Estate of Marcus Grubbs, deceased, brings this cause of action under Alabama Code § 6-5-410, for the wrongful death of Marcus Grubbs, deceased.

120.   The wrongful acts, omissions, or negligent conduct of Defendants Hamm, Crow and Babers, as described in detail above, caused the death of Mr. Grubbs while incarcerated at the Kilby Prison.

121.   Each Defendant Hamm, Crow and Babers, had a duty to protect Mr. Grubbs from known and unreasonable risks of serious harm, including homicide, by another inmate.

122.   Given the culture of violence at Kilby well documented in the media and in court documents, and known to each and every Defendant, risk of inmate-on-inmate homicide at Kilby was foreseeable.

123.   Each Defendant Hamm, Crow and Babers, consciously disregarded the known risk of harm to Mr. Grubbs by failing to respond in an objectively reasonable manner to reduce said risk of harm at Kilby.

124.  Specifically, and without limitation, each Defendant Hamm, Crow and Babers, within his or her respective authority, had knowledge and notice of the widespread history of inmate-on-inmate violence, prevalence of contraband, weapons, corruption, lack of supervision, blind spots and faulty locks at Kilby.

125.  With such knowledge and on such notice, each Defendant Hamm, Crow and Babers, failed to take any action reasonably calculated to correct these barbaric and inhumane conditions.

126.  Each Defendant Hamm, Crow and Babers, failed to enact or follow reasonable policies and procedures designed to provide adequate security and supervision; failing to properly staff the Kilby Prison with prudent and well-trained correctional officers; failed to address known security deficiencies, such as lack of intercoms, operative security cameras, and mirrors; and exacerbated the risk and condoned the conduct and conditions creating this substantial risk of serious harm at Kilby Prison.

127.  In addition, and despite having knowledge of the substantial risk of serious harm posed by inmate-on-inmate violence at Kilby, each Hamm, Crow and Babers, stationed in the vicinity of Mr. Grubbs' cell on the day of Mr. Grubbs' assault and murder either recklessly failed to monitor the cell and the housing block, or deliberately ignored the assault and murder while it was happening.

128.    Because of the relationship between the Defendants and Mr. Grubbs, as well as the foreseeability of the harm that ultimately befell Mr. Grubbs, Defendants Hamm, Crow and Babers, are each liable for the criminal acts of the third-party assailant or assailants.

129.    As a direct and proximate result of the wrongful conduct of each Defendant, Hamm, Crow and Babers, Mr. Grubbs was brutally beaten and stabbed to death by another inmate in his cell on May 4, 2022.

130.    Plaintiff seeks punitive damages in an amount to be determined by the jury, together with interest, reasonable attorneys' fees, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angela Donald, as Administratrix of the Estate of Marcus Grubbs, deceased. respectfully requests that the Court:

(a)    grant judgment in Plaintiff's favor on each of Counts One and Two asserted herein;

(b)    award compensatory damages against each Defendant, jointly and severally, in an amount to be determined;

(c)    award punitive damages against each Defendant, jointly and severally;

(d)    award reasonable attorneys' fees and the costs of litigation; and

(e)    award such other and further relief as the Court may deem just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted this 26th day of April 2024.

/s/ K. David Sawyer
K. David Sawyer (ASB-5793-R61K)
MCPHILLIPS SHINBAUM, LLP
516 South Perry Street
Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
kdsawyer64@outlook.com
Counsel for Plaintiff

/s/ Aaron Luck
Aaron Luck
(ASB-4040-O68J)
MCPHILLIPS SHINBAUM, LLP
516 S. Perry Street
Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
Aaronluckwork@icloud.com
Counsel for Plaintiff

**PLAINTIFF WILL SERVE DEFENDANTS AS FOLLOWS:**

**John Q. Hamm**
**Alabama Department of Corrections**
**301 South Ripley St.**
**Montgomery, AL 36104.**


**John Crow, Warden**
**Kilby County Correctional Facility**
**12201 Wares Ferry Rd.**
**Montgomery, AL 36117**


**Gwendolyn Babers, Warden**
**Kilby County Correctional Facility**
**12201 Wares Ferry Rd.**
**Montgomery, AL 36117**